[Cite as *State ex rel. Haydocy v. Ohio Pub. Emp. Retirement Sys.*, 2025-Ohio-2056.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cory A. Haydocy, | : | |
| Relator, | : | |
| | : | No. 24AP-432 |
| v. | : | (REGULAR CALENDAR) |
| Ohio Public Employee Retirement System, | : | |
| | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on June 10, 2025

**On brief:** *Cory A. Haydocy*, pro se.

**On brief:** *Dave Yost*, Attorney General, *Henrique A. Geigel*, and *Lisa A. Reid*, for Respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

PER CURIAM

{¶ 1} On July 12, 2024, relator, Cory A. Haydocy, filed this original action requesting a writ of mandamus ordering the respondent, the Ohio Public Employee Retirement System ("OPERS"), to process his application for a transfer of funds. On August 1, 2024, OPERS filed a motion to dismiss. Haydocy filed a motion for summary judgment, a motion to expedite proceedings and for a prehearing telephone conference, a motion to compel discovery, and a motion for a Rule 16 status conference.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate of this court. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate found that Haydocy could not establish that OPERS was under a clear legal duty to make his

requested rollover payment without OPERS's required notarized form. Accordingly, the magistrate recommended that this court grant OPERS's motion to dismiss. (Appended Mag. Decision at ¶ 39.)

{¶ 3} Haydocy filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). For the following reasons, we adopt the magistrate's decision, grant OPERS's motion to dismiss, and deny Haydocy's motions.

## I. PROCEDURAL HISTORY AND FACTS

{¶ 4} In his petition for a writ of mandamus, Haydocy catalogued the following series of events. Haydocy stated that he "was employed continuously by the State of Ohio from October 1, 2012 to December 29, 2023, contributing to [OPERS] concurrently. He held various positions, including Executive Director of the Ohio Oil and Gas Commission." (July 12, 2024 Petition at 2.)

{¶ 5} In a letter dated February 29, 2024, after Haydocy left his employment with the state, Haydocy wrote to Ohio Deferred Compensation ("ODC") and requested the transfer of the entire value of his OPERS account from his employment with the state to an ODC account. On May 28, 2024, Haydocy sent a similar letter to OPERS, requesting the transfer of his funds in OPERS to an account with ODC. Haydocy stated in his petition that, around June 27, 2024, he became aware of an OPERS internal policy that "mandated the submission of a notarized form prior to the issuance of refunds exceeding ten thousand dollars." *Id.* at 3. On June 27, 2024, Haydocy sent a demand letter to OPERS, stating that he met the statutory requirements for a refund under R.C. 140.45 and requesting the processing of his request and the disbursement of funds within five business days. (Ex. D at 1.) Haydocy, however, did not submit a notarized consent form to OPERS.

{¶ 6} On June 28, 2024, OPERS responded to Haydocy's request, stating that it had received his May 28, 2024 application, that it immediately sent him a consent form to be executed and notarized, and that it had not received a notarized consent form back from Haydocy. OPERS further stated that it was "willing to make this process as easy as possible, including notarizing the form for you in the OPERS office." (Ex. E.) OPERS stated that it

required notarization for refunds greater than $10,000 for the protection of all OPERS member accounts. *Id.*

{¶ 7} In a July 8, 2024 letter addressed to Haydocy, ODC stated that it still had not received the roll over sum from Haydocy's OPERS account. (Ex. A.) On July 12, 2024, Haydocy filed his petition for writ of mandamus with this court and the matter was referred to a magistrate.

{¶ 8} On August 1, 2024, OPERS filed a motion to dismiss in which it argued Haydocy was not entitled to relief, as OPERS's requirement of notarization of requests for refunds and rollover applications is authorized under R.C. Chapter 145. OPERS further stated in its motion to dismiss that Haydocy's requested rollover is governed by Adm.Code 145-2-67(A) which directs that rollovers occur "at the time and in the manner prescribed by the board."

{¶ 9} On December 23, 2024, the magistrate found that Haydocy could not establish that OPERS was under a clear legal duty to make the rollover payment without the submission of a notarized form. (Mag.'s Decision at ¶ 39.) The magistrate determined that "consistent with the broad authority granted by R.C. 145.09 and the board's fiduciary duty to safeguard the funds entrusted to it under R.C. 145.11, the board adopted rules that specifically provide for withholding a payment until required information—such as the notarized form at issue in this matter—has been provided by those seeking the payment." *Id.* at 7. Accordingly, the magistrate recommended that this court grant OPERS's motion to dismiss.

{¶ 10} On December 24, 2024, Haydocy filed a motion to set aside the magistrate's decision, along with 23 objections to said decision, and requested that this court grant his petition for a writ of mandamus. We now consider Haydocy's objections to the magistrate's decision and his various motions.

**II. ANALYSIS**

{¶ 11} For this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 12} A motion to dismiss pursuant to Civ.R. 12(B)(6) tests the sufficiency of the complaint. "In order for a court to dismiss a case pursuant to Civ.R. 12(B)(6) 'it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.' " *T & M Machines, LLC v. Yost*, 2020-Ohio-551, ¶ 10 (10th Dist.), quoting *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. In construing a complaint upon a Civ.R. 12(B)(6) motion, a court must presume that all factual allegations in the complaint are true and make all reasonable inferences in the relator's favor. *LeRoy v. Allen, Yurasek & Merklin*, 2007-Ohio-3608, ¶ 14.

### A. 2nd, 3rd, 4th, 6th, 9th, 11th, 12th, 19th, and 20th objections

{¶ 13} In his second, third, fourth, sixth, ninth, twelfth, nineteenth, and twentieth, objections to the magistrate's decision, Haydocy argues that OPERS has no legal basis or authority to require notarization, is compelled to release Haydocy's funds, and that OPERS abused its discretion. We do not agree.

{¶ 14} As noted by the magistrate, OPERS has a fiduciary duty to safeguard the funds it oversees and is granted broad authority under Chapter 145 of the Revised Code in order to do so. "R.C. 145.11(A) imposes upon the board a general duty to safeguard and prudently invest the funds entrusted to it." *State ex rel. Tarrier v. Pub. Emps. Retirement Bd.*, 2021-Ohio-649, ¶ 21. R.C. 145.09 further directs that "[t]he board shall perform other functions as required for the proper execution of this chapter, and may adopt rules in accordance with section 111.15 of the Revised Code for the proper administration and management of this chapter."

{¶ 15} It is under this grant of authority that the OPERS board adopted rules under Adm.Code 145, including Adm.Code 145-2-67(A), which states that a "distributee may elect, at the time and in the manner prescribed by the board, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distribute in a direct roller." Adm.Code 145-2-70(B) also directs that recipients of a benefit "shall provide to the retirement system . . . such other information as may be required by the retirement system" and allows OPERS to withhold benefits or payments until OPERS receives the required information. We do not agree with Haydocy that OPERS had no legal basis for requiring notarization, nor do we conclude it was an abuse of discretion for OPERS to require notarization prior to the rollover of funds.

{¶ 16} In his eleventh objection, Haydocy argues that R.C. 145.40 directs that OPERS "shall pay the member the member's accumulated contributions" if more than two months have passed since the end of the member's service and they have not returned to service. He contends that, under this language, OPERS does not have the discretion to withhold his accumulated contributions. He directs this court to *State ex rel. Davis v. Public Emps. Retirement Bd.*, 119 Ohio App. 181 (10th Dist. 1963). Haydocy argues that *Davis* held that an agency cannot impose requirements not explicitly found in the law and that OPERS's actions here mimic the unlawful conduct rejected in *Davis*. However, upon closer reading of *Davis* we do not agree. In *Davis*, this court rejected an OPERS policy requiring that an employing agency certify "that the employment has been terminated before a payment of contributions is made to a separated employee." *Id.* This court, however, noted that "there has been no showing that such a certification is required by a duly adopted rule or regulation, or by any of the statutes of the state of Ohio under which the system operates." *Id.* As we have noted above, that is not the case here, as the relevant provisions of the Revised Code and administrative rules allow OPERS to require proof of identity through notarization prior to the rolling over of funds.

## B. 10th, 13th, 15th, 16th, and 17th objections

{¶ 17} Haydocy's tenth, thirteenth, fifteenth, sixteenth, and seventeenth objections argue that the magistrate erred in granting OPERS's motion to dismiss, that a writ of mandamus is the appropriate remedy, and that the magistrate erred in not reaching the merits of Haydocy's petition. We do not agree. As discussed above, OPERS was within its statutory, rule-making, and discretionary authority to require the notarization form prior to granting Haydocy's rollover request. Therefore, as the magistrate found, Haydocy cannot show that he has a clear legal right to his requested relief or that OPERS had a clear legal duty to provide the requested rollover without the required notarization, and dismissal is appropriate.

{¶ 18} We also note that Haydocy argues that the magistrate accepted OPERS's mischaracterizations of the facts and law without critical examination and that dismissing his claim before the merits are adjudicated is a deprivation of due process. (Objs. at 13.) We reject this contention, as our independent review of the record and arguments has led

us to determine that "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

### C. 1st, 5th, 14th, and 21st objections

{¶ 19} In his first, fifth, fourteenth, and twenty-first objections to the magistrate's decision, Haydocy raises constitutional arguments that his property and due process procedural rights have been violated. However, Haydocy did not raise these constitutional arguments in his petition for a writ of mandamus and we now decline to address them. *State ex rel. Van Dyke v. Pub. Emps. Retirement Bd.*, 2003-Ohio-4123, ¶ 42 (Supreme Court of Ohio finding that it need not address the merits of constitutional claims as they were not raised in the complaint and the other party did not expressly or impliedly consent to litigation of those claims), citing *State ex rel. Miller v. Reed*, 1999-Ohio-315, 87 Ohio St.3d 159 (1999).

### D. 7th, 8th, 18th, 21st, 22nd and 23rd objections

{¶ 20} In his seventh, eighth, eighteenth, twenty-first, twenty-second, and twenty-third objections to the magistrate's decision, Haydocy takes issue with OPERS actions, claiming it operated with a lack of transparency, unresponsiveness, and unlawful delay. We reject these objections as they are not supported by the record, nor do they provide Haydocy with a clear legal right to a writ of mandamus. As we have noted above, OPERS operated within its statutory, rule-making and discretionary authority and therefore did not unlawfully delay the rollover of Haydocy's funds to ODC.

## III. CONCLUSION

{¶ 21} For these reasons, we overrule each of Haydocy's objections to the magistrate's decision and adopt the magistrate's decision, including the magistrate's findings of fact and conclusions of law, as our own. Haydocy has not established that he is entitled to a writ of mandamus. Accordingly, we grant OPERS's motion to dismiss, deny the writ, dismiss the action, and deny Haydocy's pending motions as moot.

*Objections overruled.*
*Respondent's motion to dismiss granted*;
*petition for writ of mandamus denied*
*and motions denied as moot.*

MENTEL, BOGGS, and LELAND, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Cory A. Haydocy, | : | |
| Relator, | : | |
| v. | : | No.  24AP-432 |
| Ohio Public Employee Retirement System, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on December 23, 2024

*Cory Haydocy*, pro se.

*Dave Yost*, Attorney General, *Henrique A. Geigel*, and *Lisa A. Reid*, for respondent.

IN MANDAMUS
ON MOTIONS

{¶ 22} Relator Cory A. Haydocy requests the issuance of a writ of mandamus ordering respondent Ohio Public Employees Retirement System ("OPERS") to process his application for transfer of funds. OPERS has filed a motion to dismiss. Haydocy has filed a motion for summary judgment and a motion to expedite proceedings and for a prehearing telephone conference. For the following reasons, the magistrate recommends granting OPERS's motion to dismiss.

**I. Findings of Fact**

{¶ 23} 1. Haydocy commenced this original action with the filing of his petition for writ of mandamus on July 12, 2024.

{¶ 24} 2. The petition contains several attached exhibits and Haydocy's notarized affidavit, in which Haydocy states that the factual representations contained in the petition and attached exhibits are true and accurate.

{¶ 25} 3. As alleged in the petition, Haydocy was continuously employed by the State of Ohio from October 1, 2012 through December 29, 2023, during which time he contributed to the retirement system administered by OPERS. Haydocy has not resumed state service since December 29, 2023, a period of more than 60 days at the time of the filing of his petition. On February 29, 2024, Ohio Deferred Compensation ("ODC") received a letter from Haydocy requesting the transfer of the entire value of his OPERS account to an account managed by ODC.

{¶ 26} Haydocy further alleges that on May 28, 2024, he sent a letter to OPERS requesting the transfer of the market value of his OPERS account to an account managed by ODC. On or about June 27, 2024, Haydocy alleges he became aware of an internal OPERS policy mandating the submission of a notarized form prior to the issuance of funds exceeding ten thousand dollars. On June 27, 2024, Haydocy sent a letter by email to OPERS demanding the processing of his requested transfer within five business days. In the letter, which was attached as an exhibit to the petition, Haydocy states that he "submitted a second application online on May 28, 2024, for my OPERS fund to be released and rolled over to my Ohio Deferred Compensation account." (Petition at 15, Ex. D.)

{¶ 27} Haydocy alleges that on June 28, 2024, OPERS responded to Haydocy's June 27, 2024 email. As reflected in an exhibit attached to the petition, counsel for OPERS stated:

> The OPERS Board is tasked with safeguarding the accounts of OPERS members. The Board is also granted discretion on how to carry out those and other duties required by Ohio Revised Code Chapter 145. *See generally*, ORC 145.09, 145.11. As has already been explained to you, part of the safeguards put in place for the protection of all OPERS' member accounts, including yours, is to require notarization for refunds greater that [sic] ten-thousand dollars.
>
> You submitted your application on May 28, 2024. Immediately after your submission, the OPERS system emailed you the attached *Member Consent for Refund from Traditional Plan Application* (Consent Form). There is no record of an earlier application. As of this writing, you have failed to complete the Consent Form, which is *part of the*

> *application required by ORC 145.40.* Therefore, because your application is incomplete and pursuant to OAC 145-1-09, staff will void your partial application if the Consent Form is not received. As explained to you, OPERS is willing to make this process as easy as possible, including notarizing the form for you in the OPERS' office.

(Emphasis in original.) (Petition at 17, Ex. E.)

{¶ 28} Also attached to the petition was a letter purportedly sent from ODC to Haydocy on July 8, 2024. In the letter, it is stated that "[a]ccording to our records, on [February 29, 2024], we received a roll-in form for a sum to be sent from OPERS to Ohio Deferred Compensation." (Petition at 11, Ex. A.) As reflected in the letter from ODC, Haydocy alleges that as of July 8, 2024, ODC had not received the funds.

{¶ 29} 4. Haydocy claims entitlement to relief in mandamus because OPERS has failed to comply with R.C. 145.40. Haydocy claims OPERS's violation of the law has resulted in substantial damages to Haydocy due to his inability to access and enjoy his property rights and benefits. Haydocy claims that "OPERS has the authority to process refund applications but lacks the discretion to deny Relator's request to rollover funds to ODC." (Petition at 6.)

{¶ 30} 5. On August 1, 2024, OPERS filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6).

{¶ 31} 6. On August 14, 2024, Haydocy filed a combined response in opposition to OPERS's motion to dismiss and a motion for summary judgment.

{¶ 32} 7. On December 16, 2024, Haydocy filed a motion to expedite proceedings and for a prehearing telephone conference.

## II. Discussion and Conclusions of Law

{¶ 33} Haydocy seeks a writ of mandamus ordering OPERS to process his application for the rollover payment of funds, in addition to such other relief as deemed just and proper.

## A. Mandamus

{¶ 34} A writ of mandamus is an extraordinary remedy " 'issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specifically enjoins as a duty.' " *State ex rel. Russell v. Klatt*, 159

Ohio St.3d 357, 2020-Ohio-875, ¶ 7, quoting R.C. 2731.01. *See State ex rel. Blachere v. Tyack*, 10th Dist. No. 22AP-478, 2023-Ohio-781, ¶ 13 (stating that the purpose of mandamus is to compel the performance of an act that the law specifically enjoins as a duty resulting from an office, trust, or station). A writ of mandamus will issue where Haydocy establishes by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of respondents to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Gil-Llamas v. Hardin*, 164 Ohio St.3d 364, 2021-Ohio-1508, ¶ 19.

### B. OPERS's Motion to Dismiss

{¶ 35} OPERS asserts Haydocy's petition should be dismissed for failure to state a claim upon which relief can be granted.

### 1. Standard of Review for Motion to Dismiss Under Civ.R. 12(B)(6)

{¶ 36} A motion to dismiss for failure to state a claim pursuant to Civ.R. 12(B)(6) is procedural and tests the sufficiency of the petition or complaint itself and any attached documents. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545 (1992), citing *Assn. for Defense of Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117 (1989). Attachments to the complaint are considered part of the complaint for all purposes. Civ.R. 10(C). Generally, in ruling on a Civ.R. 12(B)(6) motion, a court " 'cannot resort to evidence outside the complaint to support dismissal [except] where certain written instruments are attached to the complaint.' " *Brisk v. Draf Indus.*, 10th Dist. No. 11AP-233, 2012-Ohio-1311, ¶ 10, quoting *Park v. Acierno*, 160 Ohio App.3d 117, 2005-Ohio-1332, ¶ 29 (7th Dist.).

{¶ 37} A court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party. *Red Foot Racing Stables v. Polhamus*, 10th Dist. No. 19AP-390, 2020-Ohio-592, ¶ 11, citing *State ex rel. Turner v. Houk*, 112 Ohio St.3d 561, 2007-Ohio-814, ¶ 5. "Before the court may dismiss the complaint, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling the plaintiff to recovery." *Jones v. Dann*, 10th Dist. No. 09AP-352, 2009-Ohio-5976, ¶ 9, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. Provided there is a set of facts, consistent with the complaint, under which the complaining party could recover, a court may not grant a motion to dismiss

for failure to state a claim. *Prime Invests., LLC v. Altimate Care, LLC*, 10th Dist. No. 20AP-526, 2022-Ohio-1181, ¶ 23, citing *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). However, a court need not accept as true any unsupported and conclusory legal propositions presented in the complaint. *Bullard v. McDonald's*, 10th Dist. No. 20AP-374, 2021-Ohio-1505, ¶ 11, citing *Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 7 (10th Dist.).

**{¶ 38}** " 'A complaint in mandamus states a claim if it alleges the existence of the legal duty and the want of an adequate remedy at law with sufficient particularity so that the respondent is given reasonable notice of the claim asserted.' " *Hanson* at 548, quoting *State ex rel. Alford v. Willoughby Civ. Serv. Comm.*, 58 Ohio St.2d 221, 224 (1979). Creation of a legal duty enforceable in mandamus "is the distinct function of the legislative branch of government." *State ex rel. Hodges v. Taft*, 64 Ohio St.3d 1, 3 (1992). "A court in a mandamus proceeding cannot create a duty where none exists." *State ex rel. Clough v. Franklin Cty. Children Servs.*, 144 Ohio St.3d 83, 2015-Ohio-3425, ¶ 15.

## 2. The Petition Fails to State a Claim Upon Which Relief Can Be Granted

**{¶ 39}** In his petition, Haydocy alleges that he "became cognizant" of an OPERS policy that "mandated the submission of a notarized form prior to the issuance of refunds exceeding ten thousand dollars." (Petition at 3.) Haydocy alleges that such "policy served as the basis for the denial of Relator Haydocy's request for a rollover of funds." *Id.* Haydocy claims OPERS was acting contrary to law by requiring him to submit a notarized form before processing his rollover payment. (Petition at 4; Haydocy's Aug. 14, 2024 Response and Mot. for Summary Judg. at 5.) Accepting as true Haydocy's allegation that OPERS requires submission of a notarized form for the rollover payment that Haydocy seeks, Haydocy cannot establish OPERS was under a clear legal duty to make the rollover payment without requiring such submission.

**{¶ 40}** "The state retirement systems, including OPERS, are creatures of statute and 'can only act in strict accordance with their enabling schemes.' " *Poliseno v. Mitchell*, 10th Dist. No. 09AP-1002, 2010-Ohio-2615, ¶ 12, quoting *Ohio Assn. of Pub. School Emp. v. School Emp. Retirement Sys.*, 10th Dist. No. 04AP-136, 2004-Ohio-7101, ¶ 23, citing *State ex rel. Horvath v. State Teachers Retirement Bd.*, 83 Ohio St.3d 67, 74 (1998). OPERS is established under and governed by R.C. Chapter 145. R.C. 145.03(A). For the public

employees of the state and those local authorities named in R.C. 145.01, membership in the system is compulsory upon being employed and continues as long as public employment continues. R.C. 145.03(A). *See also* R.C. 145.01 (defining various terms as used in the chapter).

{¶ 41} The public employees retirement board ("the board") is responsible for the general administration and management of OPERS through effectuation of R.C. Chapter 145. R.C. 145.04. The board "is a trustee of funds belonging to public employees, which it must keep or dispose of according to the law as promulgated by the Legislature." *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 119 Ohio App. 181, 184 (10th Dist.1963). The board is under "a general duty to safeguard and prudently invest the funds entrusted to it." *State ex rel. Tarrier v. Pub. Emps. Retirement Bd.*, 164 Ohio St.3d 137, 2021-Ohio-649, ¶ 21. *See* R.C. 145.11 (setting forth fiduciary responsibilities of the board). The statutory scheme grants the board broad, discretionary authority to perform functions as required for the proper execution of R.C. Chapter 145 and to adopt rules for the administration of the retirement system. *See* R.C. 145.09 (mandating the board to "perform other functions as required for the proper execution of this chapter," and permitting the board to "adopt rules in accordance with section 111.15 of the Revised Code for the proper administration and management of this chapter"). *See also* Ohio Adm.Code 145-1-09 (reflecting the board's granting of discretionary authority to its staff "to make determinations required under Chapter 145. of the Revised Code, including, but not limited to, membership, exemptions or exclusions from membership, earnable salary, benefits, and employer reporting"); *Poliseno* at ¶ 20 (acknowledging "discretionary authority" granted by R.C. 145.09 and Ohio Adm.Code 145-1-09).

{¶ 42} Pursuant to this authority, the board adopted rules, which are codified under Ohio Adm.Code Chapter 145. Under Ohio Adm.Code 145-1-66, OPERS "may provide an electronic medium to perform an action or notice and such medium shall constitute a form provided or required by the system." Another rule specifically allows the board to set the manner by which a member may elect to have a rollover payment made to an eligible retirement plan, such as a deferred compensation plan. Ohio Adm.Code 145-2-67(A) (providing that "a distributee may elect, *at the time and in the manner prescribed by the board*, to have any portion of an eligible rollover distribution paid directly to an eligible

retirement plan specified by the distributee in a direct rollover" (Emphasis added.)). A "direct rollover" is a "payment by the retirement system to the eligible retirement plan specified by the distributee." Ohio Adm.Code 145-2-67(B)(4). An eligible retirement plan includes an "eligible deferred compensation plan" subject to certain specifications. Ohio Adm.Code 145-2-67(B)(1)(b).

{¶ 43} Another rule affords OPERS the discretion to require that certain information be provided by those seeking a benefit or payment. Ohio Adm.Code 145-2-70 (providing that "[r]ecipients of a benefit or payment and alternate payees shall provide to the retirement system * * * such other information as may be required by retirement system"). OPERS also has the discretion to withhold the benefit or payment until the required information is provided. *Id.* (providing that OPERS "may withhold a benefit or payment until the benefit recipient or alternate payee provides the information" required).

{¶ 44} Thus, consistent with the broad authority granted by R.C. 145.09 and the board's fiduciary duty to safeguard the funds entrusted to it under R.C. 145.11, the board adopted rules that specifically provide for withholding a payment until required information—such as the notarized form at issue in this matter—has been provided by those seeking the payment.[1]

{¶ 45} Nevertheless, Haydocy claims that under R.C. 145.40, OPERS is legally bound to approve his application and disburse accumulated contributions without requiring him to submit a notarized form. OPERS's payment of funds to a member who ceases to be a public employee is governed by R.C. 145.40. In pertinent part, R.C. 145.40(A)(1) provides that "if a member * * * ceases to be a public employee," except for certain listed exceptions, "upon application the public employees retirement board shall pay the member the member's accumulated contributions" if more than two months have elapsed since the member's service terminated and the member did not return to service

---

[1] Though not determinative of the question presented in this matter, it is noted that notarization serves an important function by providing evidence of a person's identity. *See* R.C. 147.53 (stating that a notary taking an acknowledgment certifies that "[t]he person acknowledging was known to the person taking the acknowledgment, or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument"); *Est. of Ortiz v. Cicconetti*, 5th Dist. No. 2023 CA 00129, 2024-Ohio-1958, ¶ 20 ("The core function of the notarial act is to authenticate the signature in one manner or another. In this manner, it serves to thwart fraud by verifying that the person purporting to convey a legal interest is indeed that person.").

during that two-month period. Haydocy points to *Davis*, 119 Ohio App. 181, to support his argument.

{¶ 46} In *Davis*, an OPERS member filed an application for refund of accumulated contributions. Though the member had been laid off, the member's supervisor refused to certify that employment had been terminated. As a result, OPERS refused to approve and process the application for refund because it determined the member had not ceased to be a public employee, nor had his public service been terminated. In support of its refusal, OPERS pointed to a "policy to have the director of the employing agency certify that the employment has been terminated before a payment of contributions is made to a separated employee." *Davis* at 182. The court rejected this argument, stating that "[w]hile this could well be the policy of the retirement system, there has been *no showing that such a certification is required by a duly adopted rule or regulation*, or by any of the statutes of the state of Ohio under which the system operates." (Emphasis added.) *Id*.

{¶ 47} Unlike in *Davis*, the above-discussed administrative rules specifically provide for OPERS to require the disclosure of information, such as the notarized form at issue in this matter, prior to making a rollover payment. Haydocy also does not allege that OPERS is requiring the director of the employing agency to certify Haydocy's termination or end of service from before processing the rollover request. *Davis* is inapposite to this matter.

{¶ 48} Moreover, the plain text of R.C. 145.40 does not prevent OPERS from requiring the submission of a notarized form prior to making a rollover payment. Though R.C. 145.40 provides that a payment can only be made "upon application," it is silent as to the form of the application. In the absence of a more specific provision, the general authority granted to the board under R.C. 145.09, in accordance with the board's fiduciary duties imposed by R.C. 145.11, controls. In short, R.C. Chapter 145 does not impose upon OPERS a clear legal duty to provide the requested relief by making a rollover payment at a member's request without requiring, as part of the application process, that the member complete and submit a notarized form. *See Tarrier*, 2021-Ohio-649, at ¶ 21. Presuming all factual allegations contained in the petition to be true and making all reasonable inferences in favor of Haydocy, as the nonmoving party, it appears beyond doubt from the petition that Haydocy can prove no set of facts entitling him to recovery in this mandamus action.

**C. Conclusion**

{¶ 49} Because Haydocy cannot show a clear legal right to the requested relief or that OPERS was under a clear legal duty to provide it, he cannot establish entitlement to a writ of mandamus. Therefore, it is the decision and recommendation of the magistrate that OPERS's motion to dismiss should be granted. Accordingly, Haydocy's motion for summary judgment and motion to expedite proceedings and for a prehearing telephone conference are moot.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.